**FLAGSTAFF BROADCASTING FOUNDATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Flagstaff Broadcasting Partnership, Intervenor.**

No. 90–1587.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 16, 1992.

Decided Dec. 4, 1992.

As Amended Dec. 4, 1992.

Order Filed Dec. 4, 1992.

Steve Bachmann with whom William P. Quigley was on the brief, for the appellant.

Robert L. Pettit, Gen. Counsel, F.C.C., with whom Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., and Gregory M. Christopher, Counsel, F.C.C., were on brief, for the appellee. Stephen R. Bell, with whom Lauren H. Kravetz, was on the brief, for the intervenor.

Before: MIKVA, Chief Judge, EDWARDS and RUTH BADER GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Appellant Flagstaff Broadcasting Foundation ("Foundation") appeals the Federal Communications Commission's ("FCC's") denial of its application to build a new FM radio station in Flagstaff, Arizona on the grounds that the FCC ran afoul of this Court's holding in *Bechtel v. F.C.C.*, 957 F.2d 873 (D.C.Cir.1992), by failing to provide a reasoned basis for applying its "integration" policy in this case. Foundation contends that the Commission's adamant refusal to even consider its proposal or respond to its challenges is arbitrary and capricious, given the Commission's failure

to ever review its "integration" policy in the 25 years since its adoption.

We agree. While *Bechtel* did not require the Commission to abrogate its current requirement of "integration" of ownership into management, the Commission was certainly required to do more than it chose to do here. *Bechtel* made clear that the Commission is obligated to confront challenges to its integration policy, and, in view of documented changes in factual and legal circumstances, to articulate reasons why, despite those changes, the policy should be applied to a particular case. *Bechtel*, 957 F.2d at 881–82. Here, not only did the FCC refuse to entertain Foundation's challenges, the Commission failed to provide even a single reason for its continued adherence to the "integration" criterion under the circumstances presented. Thus, consistent with our decision in *Bechtel*, we remand to the FCC so that Foundation's claims may receive proper attention and an adequate response.

## I.

"Integration" is one of six criteria the Commission applies when considering competing applications for a commercial radio license. These criteria were developed over 25 years ago when the FCC issued its *1965 Policy Statement on Comparative Broadcast Hearings*, 1 F.C.C.2d 393 (1965) ("*Policy Statement*"). The *Policy Statement* was intended to help guide the FCC in its congressionally mandated duty to determine which of competing applications for radio licenses would best serve "the public interest, convenience and necessity." 47 U.S.C. § 309(a). The FCC stated in the *Policy Statement* that the integration criterion was intended to merge "legal responsibility and day-to-day performance," as well as promote "greater sensitivity to an area's changing needs" and "programming to serve those needs." 1 F.C.C.2d at 395–96. These are the only stated objectives of the integration criterion, and the Commission has never elaborated on them further.

In January 1989, Foundation submitted an application to build and operate a new FM radio station in Flagstaff, Arizona. Foundation is a non-stock, not-for-profit corporation formed in the District of Columbia. It has five principals, all of whom are low to middle-income women of color who have devoted most of their adult lives to community activism and civic duty. They have all held management positions in community-related organizations and have tackled issues ranging from affordable housing, hunger, and homelessness, to Native American rights and substance abuse. Three of the women are long-time residents of Flagstaff.

In their application to the FCC, these women proposed to serve not only as owners of the radio station, but also as the Board of Directors, bearing exclusive responsibility for the establishment of all station policies, including those relating to operation, programming, personnel, sales, and all other station business. As the Board, they would employ staff, and experienced management-level personnel, to implement the policies established by the Board. The management-level personnel would be directly supervised by the Board, and their implementation of Foundation policy would be subject to regular review. And although none of the principals planned to withdraw from their current employment, all of them testified that they would dedicate as much time as necessary to fulfill their responsibilities, and would even cede their civic activities, if needed, to fulfill their obligations as Board members.

The FCC denied Foundation's application for a radio license and granted the application of the intervenor in this case, Flagstaff Broadcasting Partnership ("Partnership"). The principal reason Partnership won the license was because it received a 100% "integration" credit while Foundation received no integration credit at all. According to Commission integration rules, a station owner is "integrated" into management when her involvement amounts to "full-time active participation in day-to-day operations." *Berryville Broadcasting Co.*, 70 F.C.C.2d 1, 6–7 (Rev.Bd.1978). The Administrative Law Judge determined that Foundation's principals would not be "inte-

grated" since they would serve as directors rather than full-time managers.

After the Review Board declined to set aside the decision rendered by the ALJ, Foundation applied for review by the Commission. Foundation objected to the fact that the attributes of its principals were being "totally and rigidly excluded from consideration" even though its application was wholly consistent with the stated goals of the integration policy. Despite Foundation's protests, the Commission refused to consider the merits of Foundation's proposal, and, in routine fashion, affirmed the grant of the radio license to Partnership. Foundation seeks review of the Commission's decision in accordance with section 704 of the Administrative Procedure Act.

Foundation argues that although the goals of integration (accountability and sensitivity) may be laudable, the rigid application of the criterion to this case was arbitrary, capricious, and inconsistent with this Court's decision in *Bechtel v. F.C.C.*, 957 F.2d 873 (D.C.Cir.1992). In response, the FCC denies that its decision was improper, and argues that it was merely applying established policy—an action that does not require an elaborate explanation or justification. Moreover, the FCC contends in its brief that this case should be distinguished from *Bechtel*, because Foundation never claimed that the integration policy was "irrational" and only urged the Commission "as a matter of sound policy to do something it had not done before." In the Commission's view, *Bechtel* simply stands for the proposition that the FCC cannot ignore a well-grounded argument that the Commission is proceeding irrationally. Since Foundation failed to advance a specific charge of irrationality to the Commission, the FCC believes that *Bechtel* has no relevance here. To settle this question, a closer review of the claims presented in *Bechtel* is warranted.

## II.

Susan Bechtel, the appellant in *Bechtel v. F.C.C.*, challenged the FCC's denial of her application for a new radio station, and "asked the Commission to explain its con-tinued adherence to the integration criterion" in light of regulatory changes that have occurred since 1965, and consider whether her proposal "to build a station that would serve 25% more people and to hire a professional station manager to run it would serve the public interest better than her competitors' integrated proposals." *Bechtel*, 957 F.2d at 880.

The first regulatory change described by Ms. Bechtel occurred in 1981, when the Commission decided to exempt passive owners from the integration calculation if they agreed to exert no influence over the licensee. *See Anax Broadcasting Inc.*, 87 F.C.C.2d 483, 488 (1981). After that change in policy, applicants began to receive 100% integration credit even when only a fraction of total ownership was actually represented in management. Then, in 1982, the Commission made another significant change to integration policy by abrogating its long-standing rule that licensees were required to operate their stations for at least three years, and began to permit licensees to sell their stations without a hearing after operating them for only one year. *See* 47 C.F.R. § 73.3597(a).

Ms. Bechtel argued that these developments, taken together, seriously undermined the original intent of the integration policy, which was to ensure that integration proposals would be "adhered to on a permanent basis." *See Policy Statement*, 1 F.C.C.2d at 395 n. 6. She pointed out these new regulations produced "shotgun marriages of the most tenuous kind" between people with capital and people promising to run a station full time. *See Bechtel*, 957 F.2d at 880. She further explained that these arrangements never last for long. "Lured by the prospect of the quick profits to be made from selling the station after a year, when its market value often far exceeds the costs sunk into it," the original licensees sell their stations as soon as possible to professional broadcasters who are not bound by the integration requirement. *Id.* Consequently, Ms. Bechtel argued, virtually all radio stations are now operated by hired managers and absentee owners, in clear contravention of the

stated purposes of the Commission's integration policy.

After explaining her view of these regulatory changes, Ms. Bechtel asked the Commission to explain its reasons for continuing to apply the integration criterion, and requested the Commission to consider whether her proposal to hire an experienced general manager would better further the goals of the integration criterion than her competitors. She argued that although she did not live in the proposed service area, she had vacationed there for approximately 40 years, and was therefore acquainted with and sensitive to the community—more sensitive, she believed, than her competitors who were not from the area and had no significant contacts with the community. *Id.* at 875. The Commission responded to Ms. Bechtel's arguments in a footnote, stating that reconsideration of the integration criterion would be better presented in a rule-making proceeding. *Anchor Broadcasting Limited Partnership,* 6 F.C.C.R. 721, 724 n. 4 (1991).

On appeal, we held that the Commission must demonstrate why, in face of the regulatory changes, its focus on integration is still in the public interest and respond to Ms. Bechtel's challenges. *Bechtel,* 957 F.2d at 881. We explained that "an agency cannot escape its responsibility to present evidence and reasoning supporting its substantive rules by announcing binding precedent in the form of a general statement of policy." *Id.,* quoting *Pacific Gas,* 506 F.2d at 38–39. We also added that the Commission's "wide latitude to make policy ... implies a correlative duty" to respond to proper challenges and evaluate established policies over time. *Bechtel,* at 881; *See also FCC v. WNCN Listeners Guild,* 450 U.S. 582, 101 S.Ct. 1266, 67 L.Ed.2d 521 (1981).

What we did not say or imply, however, was that the Commission's duty to provide reasoned explanations for its policies and actions arises only when an applicant has accused the agency of "irrationality." In fact, the message of the opinion was quite the opposite. We reaffirmed in *Bechtel* what should be, by now, axiomatic—that an agency's action will be set aside by a reviewing court whenever the agency fails to provide a reasoned basis for its decision. *See* 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Assn. v. State Farm Mutual Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983). This principle applies to all agency action, regardless of whether it involves established policy or the application of brand-new rules of interpretation. Nothing in *Bechtel* disturbed this well-settled doctrine, and the Commission cites no other authority for its theory that an applicant waives her right to judicial review if she fails to accuse the agency of irrationality in the course of the administrative proceedings.

■ In view of the foregoing, we find little reason to distinguish Foundation's claims from Ms. Bechtel's. Even though Foundation never claimed that the FCC was proceeding "irrationally," it was clear throughout the proceedings that Foundation sought review of the integration policy, and had a firm basis for believing the policy was unreasonable. In Foundation's *Proposed Findings of Fact and Conclusions of Law* submitted to the ALJ, Foundation "specifically request[ed] the Commission to continue its [ ] process of reviewing its judgment," and determine whether the agency's continued adherence to its narrow definition of integration was still justifiable. In addition, Foundation objected to the exclusion of all of its evidence relating to the proposed Board, and stated that "it is not even clear whether the Commission cares that [integration] proposals might not [ ] be implemented at all, much less whether the Commission has any evidence at all to support its notion now almost a quarter of a century old and still unproved," that integration as presently defined will lead to the "best practicable service." And when Foundation appeared before the Commission, it openly acknowledged that its proposal was not conventional, but requested that the Commission review FCC policy and consider its proposal, since its principals were dedicated to accomplish "precisely the goals the Commission has established."

No doubt, it might have been more impressive if Foundation's attorneys had concisely outlined the regulatory changes since 1981 and then declared that the Commission would be acting "irrationally" if it refused to consider its proposal in light of the dubious history of the integration criterion. But despite the Commission's suggestions to the contrary, the issue here is not whether Foundation made as much of its argument as Ms. Bechtel made of hers. The sole issue presented is whether the Commission gave a rational reason for its adherence to a policy it has never reviewed.

Partnership contends that the Commission explained its policy with sufficient specificity, and that we are obliged to defer to that explanation so long as the explanation is rational. While it is of course true that we will defer to any reasoned basis the Commission provides for its actions, we made clear in *Bechtel* that conclusory statements of binding precedent and policy will not suffice. As we explained in *Bechtel* less than a year ago,

> [w]hen [an] agency applies [a general] policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued. An agency cannot escape its responsibility to present evidence and reasoning supporting its substantive rules by announcing binding precedent in the form of a general statement of policy.

*Bechtel*, 957 F.2d at 881, quoting *Pacific Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33, 39 (1974).

Here, the Commission offered only one sentence by way of explanation for failing to consider Foundation's proposal: "We do not consider the delegation of management function to employees as the functional equivalent of integration." *Julia S. Zozaya*, 5 F.C.C.Rcd. 6607, 6608 (1990). This statement does not constitute a rational explanation for the adherence to a particular policy properly challenged in a specific case. A reiteration of a policy is not a reason for it. As Partnership itself points out, "the Court may not be left to guess at the agency's findings or reasons." *Greater Boston Television Corp. v. F.C.C.*, 444 F.2d 841, 851 (D.C.Cir.1970). Unfortunately, upon this record, all we can do is guess why the Commission, in this case, does not consider the delegation of management function to employees as the functional equivalent of integration, especially since the stated goal of integration is "sensitivity to an area's changing needs," and the proposed supervisory board would be comprised entirely of community activists and long-time residents of Flagstaff. *Policy Statement*, 1 F.C.C.2d at 395–396.

Nonetheless, the FCC contends in its brief that requiring the agency to explain its decision to adhere to established policy in cases such as this would severely compromise the ability of the Commission to bring "lengthy and litigious comparative licensing proceedings to a close." In short, the Commission claims that if the agency is obligated to respond to all challenges that are made to agency policy, including those "not accompanied by a properly supported charge that the existing policy is irrational," the duty to provide a reasoned basis for agency action will become unduly burdensome.

We do not read *Bechtel* to require the Commission to respond to unsupported attacks against Commission policy. In this case, the Commission refused to hear what support Foundation had for its challenge to the integration policy, and made no attempt to explain why an alternative management style would not work, except to say that "policy" prohibited it. Foundation repeatedly asserted throughout the proceedings that its proposal would further the Commission's policy objectives. All the Commission had to do was give a reason—any rational reason—why it did not. If the Commission had ever reviewed its policy, this probably would have been a simple task.

### III.

Undoubtedly there are cases in which this Court is faced with a genuine risk of burdening the Commission by requiring lengthy defenses of established policy; this case does not present that danger, however. In this case, as well as in *Bechtel*, we

simply reiterated the well-settled proposition that an agency must be able to explain its reasons for continuing to adhere to a particular policy when properly challenged in a specific case. *Bechtel,* 957 F.2d at 881. Since the Commission failed to give a single reason for applying its integration policy, or its refusal to hear evidence regarding an alternative means of furthering the policy, there is little reason to distinguish this case from *Bechtel,* and the case is remanded for such purposes.

■ We find it important to note, though, that Foundation, on remand, should be afforded an opportunity to develop its position and receive a full response from the Commission. We are aware that Ms. Bechtel, on remand, received no more than a summary dismissal of her claims after a cursory review of the history of the integration criterion. *See Anchor Broadcasting Ltd. Partnership,* 7 F.C.C.Rcd. 4566 (1992). Apparently the Commission believed that our decision in *Bechtel* only obligated it to respond to the broad challenge Ms. Bechtel made regarding the irrationality of the criterion in light of the regulatory changes. But the *Bechtel* opinion made clear that the Commission was also required to respond to Ms. Bechtel's specific contention that her proposal would further the objectives of the criterion better than her competitors. *Bechtel,* 957 F.2d at 881. Thus, we find it important to remind the Commission that this remand does not simply trigger a reconsideration of Foundation's general criticisms of the integration policy. Foundation is also entitled to a reasoned response to its specific claim that its proposal would further the stated objectives of the integration policy better than its competitors.

*It is so ordered.*

### ORDER

Dec. 4, 1992.

PER CURIAM.

In accord with the opinion of the court filed herein this date it is

ORDERED, by the Court, that the order on appeal be vacated.